IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM DALE CARTER, (IDOC #K97856) | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION H-12-3447 |
| STUART JENKINS, *et al.*, | § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

**I.     Procedural History and Background**

William Dale Carter, an inmate of the Pinckneyville Correctional Center in Pinckneyville, Illinois, sued officials and employees of the Texas Board of Pardons and Paroles (the "Board"),[1] alleging that the imposition of sex-offender conditions on his parole and the revocation of his parole denied him due process. On February 21, 2013, the court dismissed Carter's claims with prejudice under 28 U.S.C. § 1915A(b)(1). (Docket Entry No. 11). On December 5, 2013, the United States Court of Appeals for the Fifth Circuit affirmed in part and vacated and remanded in part. The Fifth Circuit affirmed this court's dismissal of Carter's parole revocation claim as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The Fifth Circuit also affirmed this court's dismissal of Carter's claims against his ex-wife. Noting that the Board has Eleventh Amendment immunity from liability

---

[1] Carter sued Stuart Jenkins, Texas State Parole Division Director; Michael Larsen, Paula Hardilek, and Cynthia Takacs, Parole Agents in Conroe, Texas; Ms. Burks, the Supervisor of the Conroe Agents; Keith Warren, Conroe and Huntsville Supervisor; Ivy Anderson York, Regional Director; Terry McKinney, Parole Division Preliminary Hearing Officer; Sylvia Ann Mokarzel, Texas Interstate Compact Program Supervisor I; and Patricia Bizaillion Carter (Carter's ex-wife).

for parole decisions, and "accepting Carter's assertions that he was denied a hearing prior to the imposition of the sex offender restrictions as conditions of his parole," the Fifth Circuit found that "he has stated a nonfrivolous claim under § 1983 seeking injunctive relief. *See Meza v. Livingston*, 607 F.3d 392, 401, 412 (5th Cir. 2010)." *Carter v. Jenkins*, Appeal No. 13-20151 (Docket Entry No. 38). Carter's claim for an injunction against imposing sex-offender conditions on his parole was remanded.

On remand, this court ordered service of process on the Board, which moved for summary judgment. (Docket Entry No. 49).[2] Carter has not filed a response. Based on the pleadings, the motion, and the applicable law, this court grants the motion for summary judgment and, by separate order, enters final judgment. The reasons are set out in detail below.

## II. The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). When the moving party has met its Rule 56(c)

---

[2] The Office of the Texas Attorney, General acting as *amicus curiae*, sought clarification of the following issues:
    (1)    whether the Texas Department of Criminal Justice defendants, previously listed, were dismissed from this lawsuit; and
    (2)    whether the Texas Board of Pardons and Paroles ("Board") is the only party required to answer even though Carter did not name the Board as a defendant. (Docket Entry No. 34).
In response to the first question, the Texas Department of Criminal Justice defendants previously listed are dismissed from this lawsuit. As to the second question, the Board is the only party required to answer.

burden, the nonmoving party cannot survive a summary judgment motion by resting on the pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### III. The Summary Judgment Evidence

The summary judgment evidence[3] shows that on December 6, 2002, Carter was found guilty of home invasion. (Cause Number 2001CF000458, in the Eighth Judicial Circuit Court, Adams County, Illinois). Carter was sentenced to a 20-year prison term in the Illinois Department of Corrections. (Docket Entry No. 49-1, pp. 5-8). On October 28, 2011, the Illinois Prisoner Review Board issued a Parole Release Agreement, imposing parole conditions that included electronic monitoring but did not require sex-offender counseling or other sex-offender conditions. (Docket Entry No. 49-1, p. 4).

Carter applied to transfer his parole supervision from Illinois to Texas. He completed an Offender Application for Interstate Compact Transfer, agreeing that he would comply with the requirements that both States had placed or would place on him. (Docket Entry No. 49-1, p. 3). On January 9, 2012, Texas approved Carter's transfer request. (Docket Entry No. 49-1, p. 12). On

---

[3]The record includes an excerpt from Interstate Commission for Adult Offender Supervision records on William Dale Carter, Compact Case #521705, and excerpts from Carter's Offender Information Management System ("OEVIS") records, with business-records affidavits.

January 17, 2012, Carter signed a Texas Certificate of Mandatory Supervision. The terms and conditions included GPS monitoring. (Docket Entry No. 49-1, pp. 16-18).

On January 12, 2012, the Illinois parole board issued a Compact Action Request stating that Carter's Illinois parole board orders had been amended to include GPS monitoring and sex-offender counseling. (Docket Entry No. 49-1, p. 13). On January 25, 2012, the Texas Board imposed electronic monitoring as a special condition of Carter's parole. (Docket Entry No. 49-2, p. 4). On May 17, 2012, the Texas Board imposed a no-victim-contact special parole condition as well. (*Id.*).

A sex-offender treatment provider evaluated Carter and determined that he did not need counseling. On May 19, 2012, the Texas Interstate Compact Office issued a Compact Action Request, submitting the evaluation to Illinois and asking whether that State wanted to require Carter to attend sex-offender therapy "even though the therapist stated [he] did not need counseling," or whether GPS monitoring with annual evaluations was enough. (Docket Entry No. 49-1, p. 14). On July 24, 2012, the Illinois Compact Office replied, stating that it agreed with the annual evaluation. (Docket Entry No. 49-1, p. 15). The result was that Carter did not have sex-offender counseling included in his Texas parole terms.

On August 9, 2012, the Texas Interstate Compact Office notified the Illinois Interstate Compact Office that Carter had been set for a probable-cause hearing for allegedly violating his parole conditions. The hearing officer recommended returning Carter to Illinois. (Docket Entry No. 49-1, p. 19). The Illinois Interstate Compact Office agreed and issued a warrant to extradite Carter back to Illinois. On August 24, 2012, Carter was picked up from Texas and his supervision there terminated. (Docket Entry No. 49-1, pp. 20, 23).

On January 30, 2013, the Illinois parole board released Carter to parole with special conditions of anger-management counseling, GPS monitoring, and no victim contact. (Docket Entry No. 49-1, p. 32). On April 23, 2013, Carter filed an application for Interstate Compact Transfer, asking to serve his parole in Texas. (Docket Entry No. 49-1, p. 24). Texas approved that request on July 3, 2013. (Docket Entry No. 49-1, p. 28). On July 8, 2013, the Illinois parole board issued a Parole Release Agreement imposing the same special conditions, again omitting sex-offender counseling or other conditions. (Docket Entry No. 49-1, pp. 29-31).

In Texas, Carter reported to the Conroe District parole office. He was placed on GPS monitoring and required to follow the no-victim-contact condition. (Docket Entry No. 49-1, p. 33). (Docket Entry No. 49-2, p. 4). On January 26, 2014, Carter signed an Interstate Compact Acknowledgment, agreeing to abide by the supervision rules Texas imposed. (Docket Entry No. 49-3, p. 3).

Carter discharged his sentence on April 18, 2014. The GPS monitor was removed and his supervision ended on that date. (Docket Entry No. 49-1, pp. 34-37). The Texas records show that Carter was never placed on the sex-offender caseload. (Docket Entry No. 49-2, p. 3).

## IV.   Analysis

Carter alleges that the Texas Board imposed sex-offender conditions on his parole even though he has not been convicted of a sexual offense. He alleges that classifying him as a sex offender without notice or individualized determination of his purported danger to the community violated his due process rights.

In *Coleman v. Dretke*, 395 F.3d 216 (5th Cir. 2004) (*"Coleman I"*), the Fifth Circuit examined the procedures needed to impose sex-offender special conditions when a defendant who

had not been convicted of a sex offense is released to parole or mandatory supervision. The defendant in that case was convicted of burglary and later released on parole. While on parole, he was indicted for aggravated sexual assault of a child and for indecency with a child by contact, but he pleaded guilty to assault and again was not convicted of a sex offense. His parole was later revoked and he was reincarcerated. In January 2001, he was released on mandatory supervision. In February 2001, the Board held a hearing and imposed two special conditions on his release: to register as a sex offender and to attend sex-offender therapy. The defendant was not given advance notice of the hearing. The defendant registered but did not attend therapy, violating his parole, which was revoked. The defendant challenged his parole revocation in a habeas petition, alleging a due-process violation. Relying primarily on *Vitek v. Jones,* 445 U.S. 480 (1980), the Fifth Circuit held that "prisoners who have not been convicted of a sex offense have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions," because they are highly stigmatizing and invasive conditions "qualitatively different" from other conditions regularly attached to parole or mandatory supervision. *Coleman I,* 395 F.3d at 222–223. The Fifth Circuit found that while imposing the conditions and revoking based on the failure to comply with them violated the defendant's due process rights, the State was "not precluded from further efforts to add these same conditions to [the defendant's] parole upon proper notice . . . ." *Id.* at 225.

After *Coleman I,* the Texas Board changed its procedures for imposing sex-offender conditions when offenders are released to parole or mandatory supervision. *See Meza v. Livingston,* 607 F.3d 392 (5th Cir. 2010). The procedures include giving the offender written notice that his parole or mandatory supervision may be conditioned on sex-offender registration and treatment and allowing 30 days to respond. The Board puts together a packet that includes the parole file,

psychological evaluations, polygraph tests, and social, education, employment, and medical histories, and sends the packet to the panel that will hold a hearing and determine whether to condition the release to parole or mandatory supervision on sex-offender conditions, including registration or therapy Neither the defendant nor his or her attorney is allowed to see the packet. *Id.* At the hearing, a Board representative makes a short presentation describing the packet and the offender's background. Neither the offender nor his attorney is allowed to attend the hearing or present information. The panel votes, and the offender is notified of the results. The panel does not issue written findings or inform the offender of the facts on which the decision is based. There is no appeal. *Meza*, 607 F.3d at 398.

In *Meza*, the Fifth Circuit held that offenders who had not been convicted of a sex offense had a liberty interest in freedom from registering as a sex-offender and participating in sex-offender therapy. The Fifth Circuit explained its finding that:

> ... on the spectrum of due process rights afforded by the Court in analogous cases, requiring a parolee who has not been convicted of a sex offense to register as a sex offender or participate in sex offender therapy requires more process than was provided to the inmate in *Wolff*, but less process than was provided in *Vitek*. In other words, we find Meza is due: (1) written notice that sex offender conditions may be imposed as a condition of his mandatory supervision; (2) disclosure of the evidence being presented against Meza to enable him to marshal the facts asserted against him and prepare a defense; (3) a hearing at which Meza is permitted to be heard in person, present documentary evidence, and call witnesses; (4) the right to confront and cross-examine witnesses, unless good cause is shown why this right should not be granted; (5) an impartial decision maker (which we assume the Board will be); and (6) a written statement by the factfinder as to the evidence relied on and the reasons it attached sex offender conditions to his mandatory supervision.

*Meza*, 607 F.3d at 411. These requirements do not apply when an individual convicted of a sex offense is released to parole or mandatory supervision and sex-offender conditions are included in the terms of release. *See Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7–8 (2003); *Jennings v. Owens*, 602 F.3d 652 (5th Cir. 2010). In *Jennings*, even though the habeas petitioner had been convicted of a sexual assault in 1979 and special sex-offender conditions were not added until 2005, the court held that because he had been convicted of a sex offense, he had no liberty interest that was violated when the parole board imposed sex-offender special parole conditions. *Id.* at 659.

The summary judgment evidence shows that while Carter had not been convicted of a sex offense, he was not subjected to sex-offender conditions when he was released to parole. He was required to submit to GPS monitoring and was prohibited from contacting victims, but he was not required to undergo sex-offender counseling. That had been briefly required but was dropped after a sex-offender treatment provider evaluated him and determined that he did not need counseling. (Docket Entry No. 49-1, p. 15). Because Carter did not have-sex offender parole conditions imposed on his parole terms, he was not entitled to the procedural due process steps described in *Coleman I*. As a matter of law, he is not entitled to the injunctive relief he seeks.

The defendant's motion for summary judgment, (Docket Entry No. 49), is granted. This civil action is dismissed. Any remaining pending motions are denied as moot.

SIGNED on June 21, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge